56 N.J. Super. 468 (1959)
153 A.2d 723
LOUIS MOCCO AND PAULINE MOCCO, HIS WIFE; EUGENE DEMBINSKI AND GLORIA DEMBINSKI, HIS WIFE; ROBERT E. RICH; AND W. JAMES HALL AND PHOEBE HALL, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
PASKO C. JOB AND ANN MARY JOB, HIS WIFE; THE MAYOR AND BOROUGH COUNCIL OF THE BOROUGH OF ALLENDALE; THE BOARD OF ADJUSTMENT OF THE BOROUGH OF ALLENDALE; AND EDWIN W. GROSMAN, BUIDING INSPECTOR OF THE BOROUGH OF ALLENDALE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 15, 1959.
Decided July 9, 1959.
*469 Before Judges PRICE, SULLIVAN and FOLEY.
Mr. Ralph W. Chandless argued the cause for defendants-appellants (Messrs. Chandless, Weller & Kramer, attorneys).
Mr. Roy J. Grimley argued the cause for plaintiffs-respondents.
The opinion of the court was delivered by PRICE, S.J.A.D.
Defendants appeal from a judgment of the Superior Court, Law Division, setting aside a variance which, under N.J.S.A. 40:55-39, subd. d, had been recommended by the Board of Adjustment of Allendale and approved by the mayor and council of that borough.
There is no substantial controversy as to the material facts. They are outlined in detail in an opinion of this court (Heagen v. Borough of Allendale, 42 N.J. Super. 472 (App. Div. 1956)) involving the property which is the subject of the present suit.
*470 Defendants Job have operated a tavern and restaurant on the property in question in the Borough of Allendale for over 30 years. The building on the property owned by defendants Job is a 2 1/2-story building, residential in appearance, located in the one-family residential zone under the borough's zoning ordinance adopted in 1929. As the operation of the business antedated the passage of the ordinance the aforesaid continued use of the property was nonconforming, protected by N.J.S.A. 40:55-48.
It is noted that the premises in question are situated on a "heavily traveled county road." On one side of the property is a right of way used for the "transmission of power." The opposite side is bounded by a single residential parcel owned and used as a residence by the property owner's mother and father. This latter property separates the premises in question from the adjacent industrial zone, and, under the zoning ordinance, 120 feet of said parcel contiguous to the industrial zone, may be used for parking. The industrial zone abuts the Erie Railroad line. However the properties in the residential zone in question are in the main occupied as one-family dwellings for which the area is zoned as aforesaid. Plaintiffs are property owners within said residential zone.
Prior to 1929 the aforesaid use of the subject property was confined to the first floor and to one room on the second floor measuring approximately 20' x 30'. This room was used for dining and for meetings. The remainder of the second floor was occupied as living quarters by the owner and his family. In 1952 a fire damaged the premises. Thereafter existing partitions on the second floor were removed and the entire floor was converted to accommodate a kitchen and a dining room, measuring 30' x 44'. In 1954 a 13.6' x 29.6' addition to the floor was constructed. Although the use of the second floor was originally limited as aforesaid, in recent years it was expanded to include music and dancing.
In 1954 defendant borough adopted an amendment to its zoning ordinance which created, as set forth in Heagen, supra, *471 "in the residential district a small isolated business district," comprising the premises in question and adjoining premises owned by the mother of the tavern owner. The Heagen suit was then instituted to invalidate the amendment, to enjoin the owners "from enlarging the nonconforming use," to compel the "borough officials to enforce the zoning ordinance" against the owners and for incidental relief therein outlined.
The amendment was condemned as spot zoning and we enjoined the owners "from using the second floor of the building for dining and meeting purposes, except within the area of 20' x 30', above stated, where the dining and meeting room was formerly located." We further enjoined "the use of the entire second floor for dancing or music for dancing." (Heagen, 42 N.J. Super. at page 488)
Defendants then made application to the board of adjustment for a variance to permit the use of the entire second floor, including the above mentioned addition, for dining and dancing. The variance was recommended and the mayor and council subsequently approved such recommendation. Plaintiffs appeared before the board and before the mayor and council to protest the granting of the variance. After approval by the mayor and council this suit was instituted. As above stated, the trial court set aside the variance and defendants appealed. After the appeal had been argued the Supreme Court announced its decision in Grundlehner v. Dangler, 29 N.J. 256 (1959). Pursuant to the direction of this court counsel submitted supplemental briefs and reargued the appeal to present their respective views as to the application of the Grundlehner decision to the facts of the instant case.
Appellants' main contention is that there was competent evidence to support the action of the local zoning authorities and that the trial court was without authority to set it aside.
N.J.S.A. 40:55-39 provides that:
"The board of adjustment shall have the power to * * *
d. Recommend in particular cases and for special reasons to the governing body of the municipality the granting of a variance to *472 allow a structure or use in a district restricted against such structure or use * * *." (Emphasis supplied.)
In Grundlehner, supra, 29 N.J. at page 271, the Supreme Court said:
"The grant of any variance under N.J.S.A. 40:55-39(d) is exceptional relief which must meet not only the negative statutory criteria but also the affirmative statutory requirement of one or more `special reasons' which must be set forth by the municipal officials in clear and explicit terms and in detail. (Whitehead v. Kearny Zoning Bd. of Adjustment, supra, 51 N.J. Super. 560, at page 570); this requirement is of the utmost importance not only in insuring just and responsible municipal action but also in affording to the court a proper basis for judicial review."
Guided thereby we consider the findings of the board of adjustment. It recommended the granting of the variance for the following reasons:
"A. Since all Board members are personally familiar with the physical layout of the premises we feel that it will not substantially impair the intent of the zone plan and zoning ordance [ordinance] nor will it be a detriment to the public welfare.
1. Industrial zone nearby.
2. Near railroad.
3. Located on heavily traveled county road.
4. No objections from immediate property owners.
5. Air conditioned.
6. Ample parking area.
B. The Inn had been in existance [sic] for a long period of time prior to passage of the zoning ordinance.
1. Absence of dwellings in immediate neighborhood.
C. The extension of dining and dancing to the second floor should be an asset rather than a detriment to the community.
1. Patronized by many civil [civic] groups.
2. Would tend to insure high property values in area if Inn was maintained as first class establishment.
3. No disturbances on record.
D. The preponderance of testimony at the public hearings was in favor of this request.
1. There were no objections from immediate property owners."
*473 Thereafter at a meeting of the mayor and council of the borough a resolution was passed (by a vote of 4 to 3) which, in part, was as follows:
"WHEREAS, the Governing Body has duly considered the contents of the minutes of the Board of Adjustment aforesaid and has duly considered the arguments presented at the public hearing of March 14 aforesaid,
NOW, THEREFORE, BE IT RESOLVED, that the variance sought by Pasco C. Job and recommended by the Board of Adjustment of the Borough of Allendale to permit the use of Crescent Terrace Inn, located at 168 West Crescent Avenue, Allendale, New Jersey as relating to the second floor thereof for the purposes of wining, dining and dancing, be and the same is hereby approved.
AND BE IT FURTHER RESOLVED that it is hereby found that such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the Zoning Ordinance of the Borough of Allendale which said finding is based upon the following facts establishing this application to be a particular case and the following to be special reasons upon which this resolution is predicated:
1. The applicant's premises are located within several hundred feet of an industrial area so zoned to the south and which as an incident thereof is permitted the parking of motor vehicles around the perimeter upon residential premises.
2. The location of the railroad and the use thereof in the vicinity of applicant's premises.
3. The fact that applicant's premises are located upon a heavily traveled county road.
4. The fact that the service was made upon all interested persons within 200 feet of applicant's premises, none of such interested persons objected to the relief sought and many in fact requested such relief.
5. That the applicant's premises afford ample off-street parking.
6. The fact that applicant's premises are reasonably isolated from other residental [residential] uses and the nearest home is that of applicant's mother, who joins with the applicant.
7. That the facilities of the Inn serve a worthy public use in the community by affording a meeting place for numerous local civic organizations and furnishes the facilities for desirable social activities such as weddings, testimonials and special gatherings.
8. The fact that the history of applicant's use of the premises, or his predecessors over a period of many years, has not resulted in complaints by reason of noise or other discomfort to persons in the vicinity.
9. The fact that a public service right-of-way is in the immediate vicinity of the applicant's premises which is used for non-residential purposes and for the transmission of of [sic] power."
*474 Defendants stress that the Supreme Court in Grundlehner, supra, in holding that zoning authorities are not precluded from granting a variance to enlarge a nonconforming use, said (29 N.J., at page 269):
"Since a variance may, upon a proper showing of special reasons within N.J.S.A. 40:55-39(d), be granted to create a new nonconforming use in a residential zone it may clearly be granted to enlarge a pre-existing nonconforming use; it is entirely evident that a limited extension of a pre-existing professional office, gasoline station, funeral home, shopping center or other business activity in a residential zone, will ordinarily be less likely to involve substantial impairment of the zoning plan than will the creation of a wholly new use of such nature."
Defendants also rely upon a further holding in Grundlehner that the grant of a variance is "entitled to the customary judicial presumption of validity." They assert that the action of the local zoning authorities should not be set aside because plaintiffs "produced no competent evidence that the grant of the variance to the defendant Jobs [sic] was illegal * * *."
The principles enunciated in Grundlehner require this court in the case at bar to examine the sufficiency of the findings which, defendants assert, support the action taken by the municipal bodies. The court "must consider each case on its own particular facts." (Grundlehner, 29 N.J. at page 267.) In Grundlehner the court was concerned with certain physical additions to a private home in a residential area in which a funeral parlor was being operated as a nonconforming use. In considering the sufficiency of the findings which had been relied upon by the municipality to authorize the requested variance the court held as follows:
"The resolution by the board of commissioners simply set forth that it had considered the proceedings before the board of adjustment and had inspected the premises and found that the granting of the addition to the funeral home would `correct a peculiar and exceptional practical difficulty and hardship to the owner,' would be without `substantial detriment' to the public good and would not `substantially impair' the zoning plan. It did not set forth any *475 of the facts disclosed by the board's inspection. * * * It failed to make any basic findings as to whether the variance would result in increase of business or in avoidance of undesirable street incidents or in elimination of milling and crowding by patrons along the street or as to other pertinent factors. And it failed to specify the nature of the difficulty and hardship which was the single affirmative ground for relief expressed in the resolution. * * * In view of the absence of any formal resolution by the board of adjustment setting forth the essential basic and ultimate factual findings and the insufficiency of the resolution by the board of commissioners, we believe that the cause should now be remanded for findings and recommendation to the board of commissioners * * *." (29 N.J., at page 271)
In the case at bar we note that the minutes of the meeting of the board of adjustment of February 18, 1957, referring to the meeting of February 4, 1957, contain the following: "He [defendant Pasko C. Job] then informed the Board that he was not pleading hardship and requested that the minutes of the previous meeting be so corrected."
In the recommendation of the board of adjustment to the governing body and in the latter's approving resolution the asserted justification for the variance was centered in the "public welfare." With reference to the aforesaid negative statutory criteria the board concluded that the requested variance would not be detrimental "to the public welfare" nor "substantially impair the intent of the zone plan and zoning ordinance" and also concluded affirmatively that it would be "an asset * * * to the community."
We are not here concerned with any suggested deficiency in the record of the board of adjustment to be remedied by remanding the matter to it to make "essential basic and ultimate factual findings." Grundlehner, 29 N.J., at page 272. Defendants stand on the record as presented and have unequivocally so stated.
Apart from the question of the sufficiency of proofs establishing the negative criteria of R.S. 40:55-39 that "the relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance," the *476 "special reasons," which defendants assert meet the essential affirmative criterion justifying the variance, have been denominated by them as those outlined in paragraph 7, appearing in the foregoing resolution passed by the governing body.
At oral argument of this appeal counsel for defendants was specifically asked to state which findings he contended satisfied the "affirmative statutory requirement of one or more `special reasons.'" He replied that the following quoted statement designated as paragraph 7 in the foregoing resolution of the mayor and council, satisfied that mandate:
"* * * [T]he facilities of the Inn serve a worthy public use in the community by affording a meeting place for numerous local civic organizations and furnishes the facilities for desirable social activities such as weddings, testimonials and special gatherings."
We therefore initially assay the reasons above stated. At best they constitute a description of the facilities available at the site of the property in question with no supporting evidence that it is essential that those specific facilities be available at that particular site in a residential district to advance or serve the purposes of the borough zoning ordinance, rather than "the individual interests of the nonconforming user," in this case defendants, Job. Heagen, supra, 42 N.J. Super., at page 488; Whitehead, supra, 51 N.J. Super., at page 570. Furthermore in the instant case the asserted "special reasons" are completely unrelated to the objective of "general welfare" found to be served by the variance allowed by the Supreme Court in its recent decision in Andrews v. Board of Adjustment of the Township of Ocean, 30 N.J. 245 (1959). In Andrews the court recognized that "`special reasons' gained validating content from the purposes of zoning specified in R.S. 40:55-32." See also Ward v. Scott, 11 N.J. 117 (1952), and Ward v. Scott, 16 N.J. 16, 18 (1954). It was also stated in Andrews, 30 N.J. at page 251: "As pointed out in Grimley v. Ridgewood [45 N.J. Super. 574, 581] no definition of `special *477 reasons' has been attempted beyond the reference to R.S. 40:55-32. In the nature of the subject, a precise formula is not feasible. Each case must turn upon its own circumstances."
In the instant case the particularized "special reasons," asserted to be the justification for the conclusion by the municipal bodies that the "general welfare" (the standard of R.S. 40:55-32 here pertinent) will be served, cannot as a matter of law meet the essential affirmative criterion. The facts relied upon present no justification for the conclusion that the particular site in this residential district must be the location for the variance here sought in order to promote the "general welfare." Attention is sharply focused on the query as to what phase of "general welfare" will be promoted by permitting dancing and music at this particular site. It is clear that the conclusion of the board of adjustment that the "general welfare" will be served has to be buttressed by facts which logically compel such conclusion. In Andrews, supra, which involved a proposal that a building in a residential zone be used for a parochial school, the majority opinion noted with reference to this critical issue that no one could question that "the education of children directly furthers the `general welfare.'" It added, 30 N.J. at page 251:
"The education here to be provided is an accepted equivalent of public schooling. A need exists. Presently the community's children of the Catholic faith attend a parochial school in Asbury Park, the facilities of which are hard pressed because of swelling population, as indeed are those of the public school in the township itself."
For the above reasons the court held that the "local authorities could properly conclude that a special reason for a variance" there existed. Not so in the case at bar. Apart from defendants' contention that the record supports the conclusion that adequate evidence exists to support the dual negative criteria that the variance would be "without substantial detriment to the public good" and would "not *478 substantially impair the intent and purpose of the zone plan and zoning ordinance," no evidence appears establishing affirmatively that the "general welfare" would be promoted by the variance. The mere conclusion of the board unsupported by relevant factual detail does not meet the affirmative criterion. The fact that a place for public entertainment involving music and dancing is deemed by the board and the governing body to be desirable for the "public welfare" does not mean that facilities for such types of recreation have to be furnished by an enlarged use of a tavern located in an Allendale residential zone and specifically at the site in question.
In sharp contrast with Andrews, supra, in which the Supreme Court noted (30 N.J., at page 249) that existing "special reasons" for the variance were found by the board of adjustment "in adequate factual detail and with ample support in the record," is the situation in the case at bar. The aforesaid reasons relied upon by defendants for the variance at the particular site of the Job property are unrealistically related to the "general welfare." Our examination of the above quoted paragraph 7 of the resolution of the governing body (as well as our examination of any other statement appearing in the record of the board of adjustment or that of the governing body) reveals no facts demonstrating that it is necessary that this particular building in the residential zone be rendered available for the purposes outlined.
The remaining findings of both bodies are either negative statutory criteria or editorial comment. Some of them are in the category described by Judge Hall (now Justice Hall) in Whitehead, supra, 51 N.J. Super. at page 570, in the following language:
"* * * The other factors mentioned by the board, viz., off-street parking and protection against annoyance to the neighbors, even if bottomed on sufficient evidence, are not `reasons' serving any purpose of zoning in the proper sense. They amount at best to no more than saying that the variance will not hurt area residents *479 any more than the present use. That is no basis at all. Monmouth Lumber Co. v. Ocean Township, supra." (9 N.J. 64 (1952).)
We also deem it important, in passing judicially on the requested variance, that attention be riveted on the various courses of action pursued by defendants Job. Starting with the recognized nonconforming use of the tavern and the limited dining facilities on the second floor, they proceeded without authority and without seeking municipal approval to enlarge and expand the nonconforming use.
Thereafter the municipality on May 13, 1954 amended the Allendale zoning ordinance in the manner stated in Heagen, supra, 42 N.J. Super., at page 477. The trial court in Heagen, a suit by property owners in the residential zone seeking to preserve the zoning plan, declared the amendatory ordinance void and we enjoined "the use of the entire second floor for dancing and music for dancing" and furthermore limited, as aforesaid, the area on the second floor which might legally be used as a dining and meeting room. Defendants are now seeking to sustain the variance to permit the entire second floor to be used for dining and dancing and ask that we give legal sanction to the enlarged use which they originally created without authority. We refuse so to do.
Defendants further argue that the premises are unsuitable for residential use and if the variance be not allowed this would constitute a deprivation of property without due process of law. The answer to this contention is that they have not shown that the property is unsuitable for the operation of a tavern with dining room area as a nonconforming use which operation has existed for many years.
Defendants further urge that the plaintiffs are without standing to attack the granting of the variance because they live more than 200 feet from the tavern. This point is without merit. N.J.S.A. 40:55-44 requires that notice be given to all property owners within 200 feet of the property in question. The fact that plaintiffs are not within the class statutorily required to receive notice has no effect *480 upon their standing to institute and maintain the within action.
One further phase of the case requires attention. At the hearing before the trial court defendants' objection to the taking of testimony was overruled. We hold that the taking of testimony before the trial court was not proper under the circumstances here involved. Beirn v. Morris, 14 N.J. 529, 537 (1954). However, as our opinion is not based upon the testimony of the witnesses before the trial court, we deem such action harmless.
The judgment of the trial court is affirmed.