103 N.J. Super. 367 (1968)
247 A.2d 350
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GALLOP BUILDING, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1968.
Decided November 8, 1968.
*369 Before Judges GOLDMANN, KOLOVSKY and CARTON.
Mr. Michael D. Schottland argued the cause for appellant (Mr. George M. Chamlin, attorney).
Mr. Robert E. Tarleton argued the cause for respondent (Mr. John E. Keale, attorney; Mr. Donald F. Stevens on the brief).
The opinion of the court was delivered by CARTON, J.A.D.
Defendant appeals from a conviction after a trial de novo in the County Court on a charge of violating section 7(3) (b) of the Borough of Shrewsbury zoning ordinance. It was fined $20 and costs.
In September 1965 defendant acquired property in the B-1 business zone, consisting of two adjoining plots, known as lots 4 and 5, each 50 feet in width by 145 feet in depth, and fronting on White Road. An office building on Lot 4 houses five enterprises which employ a total of 14 persons who presently use the remainder of lot 4 and 5 as a parking lot, there being insufficient parking space for lot 4 alone to accommodate all the vehicles.
Section 7(3) (a) of the zoning ordinance provides that in any business zone, every portion of land less than 50 feet from a residential zone boundary line shall be known as a business buffer area. Such area may not be used for the erection of any building or structure or extension thereof, *370 except in the case of an existing building wholly or partly located in that area and exclusively devoted to residential uses.
Section 7(3) (b), the specific section under which defendant is charged, provides as follows:
"No part of any lot containing a business buffer area shall be used for or devoted to any business purpose unless there shall have been established a screen belt of at least 20 feet wide and parallel to the zone boundary and consisting of evergreen trees planted and maintained at a minimum height of five feet and of such density across the entire width of the lot so as to obscure from the residential zone the business activity conducted on the lot. Such planting shall be in accordance with a plan which shall first be approved by the Planning Board of the Borough of Shrewsbury in accordance with the standards herein set forth."
Section 7(3) (c) states that when any land in a business zone abuts a residential zone boundary line and is used for business or forms a part of a lot used for business, the screening belt shall be placed at the boundary line within the business buffer area.
Defendant produced a landscape contractor who testified that it would take 180 trees, spaced four feet apart, to cover the 20' X 145' area in order to screen the activities on its property from the adjoining residential area. At $28 a tree, this would cost $5,040. In addition, planting the trees and maintaining them for one year would cost $3,024. Maintenance in succeeding years would be $750 a year. The county judge found this testimony purporting to establish the cost as prohibitive, "incredible to the point of absurdity," and therefore gave it no weight.
The trial judge said that the ordinance was presumed to be valid and could not be set aside except upon a clear showing that it was arbitrary and unreasonable, citing Vickers v. Gloucester Tp. Committee, 37 N.J. 232 (1962), certiorari denied, 371 U.S. 233, 83 S.Ct. 326, 9 L.Ed.2d 495 (1963). There being no such showing, he found defendant guilty of violating the ordinance.
*371 Defendant assails the validity of the ordinance on the general grounds that these requirements provide for different treatment of property within the same district, contrary to N.J.S.A. 40:55-31; that they serve no legitimate zoning purpose, and that there exists no reasonable relationship between the regulations and the public interest.
On the record before us, we are not prepared to state that the presumption in favor of the validity of the ordinance has been overcome.
This provision of the ordinance does not offend N.J.S.A. 40:55-31, which mandates equal treatment for lands bearing the same classification. The ordinance provides for general uniformity of treatment for all property within the B-1 business zone, with special requirements for all property used for business purposes in that zone which borders on a residential zone.
Such a classification, while recognizing the reality that zoning boundaries must be fixed somewhere, seeks at the same time to provide a buffer provision to accommodate the needs of property owners bordering the two different zones. It evidences a determination that the permitted business operation has a potential for harmful influence, requiring protection for abutting property owners in the residential zone. See Kozesnik v. Montgomery Tp., 24 N.J. 154, 175, 184 (1957).
A buffer provision such as the one under consideration contains attributes similar in character to the setback, rear yard, side line, percentage of lot use, and similar requirements customarily found in zoning ordinances. Such requirements, when reasonable in scope, have been uniformly upheld as proper. See Honigfeld v. Byrnes, 14 N.J. 600 (1954), and Annotation, "Construction of zoning regulations requiring side or rear yards," 94 A.L.R.2d 419 (1964).
Nor can it be fairly said that the ordinance serves no legitimate zoning purpose and that it has no reasonable relationship to the public interest. Such a purpose can readily be found in the general welfare provision of N.J.S.A. *372 40:55-33 from the standpoint of conserving the value of abutting residential property, from an aesthetics standpoint, and from other standpoints as well.
Defendant further contends that the ordinance is arbitrary and confiscatory because it is unreasonable to deprive the owner of a tract of land having a 100-foot width of the use of 20 feet of that property. Defendant argues that such a requirement is particularly unreasonable in its application to its property in view of the intended use of the buffer area and the cost of complying with the terms of the ordinance.
In considering the validity of the ordinance generally, we cannot limit ourselves to its impact on the property of a particular defendant. Even if it appears that the ordinance may be unreasonable in relation to the owner's property, it does not follow that this court should strike it down. As the Supreme Court said in Kozesnik, supra, at p. 183, "Ordinarily the invalidity of an ordinance as to a small parcel will not vitiate the treatment of the entire district within which it is situated."
The record does not disclose the number, size, character or uses of the various properties located in the B-1 business zone which border residential districts. Without proof of this nature, it is impossible to determine whether such a provision is reasonable as applied to other tracts in the municipality. For example, it may be eminently proper to require 20 feet or more as a buffer area on premises to be used for a large shopping center or for a similar purpose. Even as to a parcel 100 feet in width, we are not prepared to say that such requirement, although perhaps approaching the limits of reasonableness, is necessarily excessive under all conditions. Particularly is this true since the variance procedure of N.J.S.A. 40:55-39 is available.
The court should, under such circumstances, decline to adjudicate the attack upon the ordinance until the owner has exhausted his remedy before the board of adjustment. Cf. Deal Gardens, Inc. v. Board of Trustees of Loch Arbour, 48 N.J. 492 (1967). At the trial before the County Court *373 defendant's counsel intimated that it had sought and been denied a variance from the provisions of section 7 of the ordinance. However, there was no evidence adduced that such was the fact, nor was there any information supplied as to the specific nature of the application.
As a result of inquiry at the oral argument, we have ascertained that defendant, in December 1966, referring to itself as owner of lot 5 and without specifically describing itself as owning the adjoining lot, applied for a special exception under N.J.S.A. 40:55-39(b) and, in the alternative, for a variance under N.J.S.A. 40:55-39(c), to use lot 5 for a "driveway and parking area in conjunction with established professional building use on westerly half of Lot 4." The application was denied by the board of adjustment without any stated reasons.
Apparently as a tactical measure, defendant, rather than appeal, decided to continue the use of the premises contrary to the zoning ordinance, planning to challenge its legality when and if action was brought against it to enforce the ordinance.
In the light of what has developed, a more appropriate procedure would have been to seek a review of the denial of the variance in an action in lieu of prerogative writs. In such a proceeding the issue as to the validity of the ordinance generally and its applicability to defendant's property in particular could have been raised by defendant without running the risk of being penalized for its violation. Such a review would also have permitted a comprehensive determination on what is essentially a civil zoning case rather than a fragmented determination in a proceeding to enforce a penalty.
Under the circumstances, we are of the opinion that justice will best be served by an affirmance of the judgment appealed from, but without prejudice to the right of defendant to file a new application for a variance, and if that application is denied, to institute an action in lieu of prerogative writs for a further review. The board of adjustment, *374 in considering such application, may, if it determines that a variance should be granted in whole or in part, impose reasonable conditions designed to protect any abutting property owner from the harmful influences which the challenged ordinance was designed to regulate. It is expected that such a proceeding would result in a fuller record than that with which we are presented here.
Affirmed.