117 N.J. Super. 130 (1971)
283 A.2d 768
ANNA O. GRATE AND AMG ASSOCIATES, A NEW JERSEY PARTNERSHIP, PLAINTIFFS,
v.
TOWNSHIP OF SPRINGFIELD, UNION COUNTY, NEW JERSEY, A MUNICIPAL CORPORATION, THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF SPRINGFIELD, THE BOARD OF ADJUSTMENT OF THE TOWNSHIP OF SPRINGFIELD, AND PAUL GREENSTEIN, AS BUILDING INSPECTOR OF THE TOWNSHIP OF SPRINGFIELD, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 5, 1971.
*133 Mr. Vincent J. Apruzzese for plaintiff (Mr. Frederick F. Danser, III on the brief; Messrs. Apruzzese & McDermott, attorneys).
Mr. Jay B. Bloom for defendants Township of Springfield, the township committee, and Paul Greenstein, as building inspector, etc. (Messrs. Bloom & Drobner, attorneys).
Mr. Sanford A. Meskin for defendant board of adjustment (Messrs. Goldhor, Meskin & Ziegler, attorneys).
FELLER, J.S.C.
The subject property, known as Lots 1, 2, 3 and 4 in Block 21 on the tax map, forms a block front parcel on the northerly side of Morris Avenue between Short Hills Avenue and Lewis Drive, in the Township of Springfield, Union County, New Jersey, and lies across the boundary of two zoning districts. For 150 feet back from Morris Avenue it is in an O District zone (office use). The four lots comprise a unit with a frontage on Morris Avenue extending approximately 277 feet westerly from Short Hills Avenue to Lewis Drive and varying in depth from 195 feet in the center (lot 2), to 118 feet on the Lewis Drive side (lots 3 and 4), and 184 feet on the Short Hills Avenue side (lot 1). The rear portion of approximately 45 feet deep in the center (lot 2), and approximately 34 feet deep on the Short Hills Avenue side (lot 1), is in an S-60 single-family residence zone.
Application was made to the board of adjustment for the purpose of securing a variance to permit the use of the rear portion of the Lots 1 and 2 for O District zone use, the same as the front 150 feet thereof, so as to allow the entire parcel to be uniformly zoned and used for O District use.
In the proceedings on said variance application there was presented before defendant board of adjustment a proposed plan to erect an office building on the subject premises at the corner of Short Hills and Morris Avenues, said building *134 to be fully within the 150-foot line from Morris Avenue, with the rear portion over the 150-foot line to be used as part of the parking area required for the building under the zoning ordinance. While the said rear portion was nominally approximately 34 feet deep, irregular, because of the fact that 10 feet thereof must be used for the required 10-foot buffer zone between the residential and office zone areas, the land for which the use variance was required actually only consisted of a strip approximately 24 feet deep, irregular, fronting on Short Hills Avenue. Thus, looking at the subject premises from its Short Hills Avenue aspect, the land in question lies on Short Hills Avenue at a point 150 deep from Morris Avenue, to a point approximately 184 feet deep from Morris Avenue (as distinguished from the land across the street from the subject premises, on the other side of Short Hills Avenue, where it is in an office zone to a point 200 feet deep from Morris Avenue).
After full hearings the board of adjustment granted the application, recommending to the township committee by resolution dated April 1, 1969 that the same be approved subject to three conditions on the use of the property with respect to vehicular drives and buffer zones. The conditions were as follows:
(1) There shall be no vehicular entrance or exit drive between said property and Short Hills Avenue.
(2) The main entrance and exit drive shall be from and to Morris Avenue with a secondary drive, if applicants desire connected to Lewis Drive with a left hand turn only on exiting.
(3) A ten (10) foot deep buffer area shall be maintained along the entire rear property line and between the parking area and the adjoining properties in the S-60 District. The buffer strip shall consist of evergreen shrubs and a six (6) foot high close woven wood fence, as required in Section 9-E-10 of the Zoning Ordinance and permanently maintained.
Thereafter, proceedings on the board of adjustment's recommendation were had before the township committee which, at its meeting held on May 27, 1969, denied the application for a use variance.
*135 Thereupon, these proceedings were instituted to review the denial and/or set aside the ordinance as it applies to the subject premises. During the course thereof plaintiffs modified their plans for the office building, relocated it to the corner of Lewis Drive and Morris Avenue, and proceeded with the erection of a three-story office building on that portion of the subject property where such use was permitted. The building is now completed and plaintiffs are occupying and using same.
In April 1968 a joint venture was formed to acquire the subject real property for the purpose of erecting and operating an office building thereon; the joint venture became the plaintiff AMG Associates, a New Jersey partnership, having as its members Vincent J. Apruzzese, Frank X. McDermott and M. David Giardino. Plaintiffs' contract vendors of the subject property acquired it in 1941 and 1944, respectively. At the time of the making of contracts in April and May 1968 with the aforesaid contract vendors, the subject premises were, under the zoning ordinance of 1955 of the Township of Springfield then in effect, located in an LB use district which extended 150 feet from Morris Avenue, with the remainder of the premises in an S-60 use district. The LB district permitted office building use and the S-60 district permitted residence use. In April and May 1968 the zoning ordinance contained section 31-D-30.01, which permitted the board of adjustment in appropriate cases to recommend to the township committee, where the lot lay across the boundary of two districts, that a permit be granted for the extension into the more restricted district of a lawful conforming use permitted in the less restricted district, but for a distance not exceeding 50 feet measured at right angles to such district boundary.
In April and May 1968 there was then in existence a report dated May 1967 prepared by the township planning board in furtherance of a master plan for the township, wherein and whereby the subject premises were placed in *136 a use zone district for office use to a depth of 200 feet from Morris Avenue.
Subsequently, a zoning ordinance was enacted in September 1968, which is the zoning ordinance now in effect in the Township of Springfield, under and by virtue of which the relief provisions of section 21-D-30.01 of the zoning ordinance of 1955 were eliminated and no comparable provisions for relief were provided. Office building use was provided for, designated as an "O" use district. Specific areas were designated as O zones, and also various areas along Morris Avenue were zoned for office use to a depth of 200 feet from Morris Avenue up to the easterly side of Short Hills Avenue. With reference to the subject premises and for two blocks west of the subject premises, the zoning for office use is 150 feet deep from Morris Avenue; the remainder of the subject premises over 150 feet deep from Morris Avenue was placed in an S-60 single-family residential use district.
In or about September 1968 there was passed on a first reading by defendant township an amendement to the zoning law aforesaid to extend the 150-foot office zone in the area of the subject premises to its rear property lines, which amendment thereafter failed of passage and was not enacted.
The proceedings before the board of adjustment and the township committee were conducted on the basis of the provisions of the zoning ordinance of 1968, as in effect at the time of the hearings.
Plaintiff appeals the denial of the variance and contends that the 1968 ordinance of the township committee is invalid in its application to its property. Defendants deny the contentions of plaintiffs.

I
With reference to the variance proceedings, conditions have changed since the hearings were conducted. Plaintiffs have modified their plans for said office building, relocated *137 the same to the corner of Lewis Drive and Morris Avenue, and proceeded with the erection of the building on that portion of the subject property where such use was permitted under the provisions of the O District zone. The building is now completed and plaintiffs are now occupying same. Thus plaintiffs have rendered impractical the first and second conditions imposed by the board of adjustment that (1) there be no vehicular or exit drive between said property and Short Hills Avenue because this is permitted and is being done under the terms of the permitted use in the O zone, and (2) the use of a secondary drive with a left-hand turn on Lewis Drive has been prevented by the erection of the building blocking any such exit.
The photographs (Exhibits PA-29 annd PA-30) reveal that on Short Hills Avenue there is a driveway for ingress and egress to and from the parking lot in the O zone. Also, as stated supra, the building on the westerly part of the site prevents the use of an egress into Lewis Drive.
In addition, the reasons submitted by the board of adjustment in recommending the variance and the township committee in denying this variance may have been justified at the time, but the question is: What effect, if any, would the changed conditions have on the deliberations of the board of adjustment and the township committee if each was to consider evidence resulting from the changed conditions? This would require a remand or the filing of a new application. However, this would only prolong a final determination of the matter. Consequently, the denial of the variance by the township committee will not be disturbed.

II
Plaintiffs contend that the township's 1968 ordinance is invalid as to their property. Plaintiffs do not challenge the zoning ordinance in its entirety. Their pro tanto attack is directed to the ab initio invalidity of the ordinance as it related to the subject property, and in that respect they *138 maintain in effect that the ordinance is ultra vires and void. It was not only appropriate but essential under the circumstances that plaintiffs first apply for a variance before the local agencies of the municipality and thereby exhaust their available administrative remedies. In other words, when a zoning ordinance is not claimed to be invalid in its entirety, but only to be arbitrary and unreasonable in its application to the owner's land, the trial court should ordinarily decline to adjudicate this attack upon the ordinance until after the owner has exhausted his remedy to seek relief from the local board of adjustment by applying for a variance. Ascione v. Union City, 77 N.J. Super. 542, 547 (App. Div. 1962); State v. Gallop Building, 103 N.J. Super. 367, 373 (App. Div. 1968). See also, Deal Gardens, Inc. v. Board of Trustees, Loch Arbour, 48 N.J. 492 (1967). In the present case plaintiffs did make an application for a variance for the use of the subject premises, and such application was denied by the township committee.
Plaintiffs' property runs approximately 184 feet deep along Short Hills Avenue in a northerly direction from Morris Avenue. The division line of the zone runs through the property, so that the first 150 feet north from Morris Avenue is in an office use O zone and the remaining 34-45 feet is in an S-60 single-family residence zone fronting on Short Hills Avenue. The 150 feet in the O zone is used for the office building and parking and the remaining 34-45 feet in the rear is not used because it is zoned for residential purposes. It is plaintiffs' contention that this zone line renders the 34-45 feet in the rear useless for all practical purposes.
Zoning district lines need not coincide with property lines, and the municipality has the power and authority to set these district lines. The fixing of zoning lines is a critical function of the zoning process and is a matter of legislative discretion. Tidewater Oil Co. v. Mayor and Council of Carteret, 84 N.J. Super. 525 (App. Div. 1964), aff'd 44 N.J. 338 (1965). However, the local exercise of zoning *139 power is not absolute and unlimited; it is conditioned by the statutory considerations to be served by zoning. Potts v. Board of Adjustment, Princeton, 133 N.J.L. 230 (Sup. Ct. 1945). The essence of zoning is territorial division according to the character of the land and structures and their peculiar suitability for particular uses and uniformity of said use within the division. Schmidt v. Board of Adjustment, Newark, 9 N.J. 405 (1952); Scarborough Apartments, Inc. v. Englewood, 9 N.J. 182 (1952).
In Spanich v. Livonia, 355 Mich. 252, 94 N.W.2d 62 (Sup. Ct. 1959), the owner of a lot which had previously been zoned for industrial use and used for manufacturing purposes sought to restrain the city from enforcing an amended zoning ordinance which ran a district line across the owner's lot so as to cut off the rear portion and create a small rectangular parcel limited to residential use. The court held that the action of the city in running this zoning district boundary line across the lot so as to cut off the rear portion and therefore create a small landlocked rectangle limited to residential uses was under the circumstances arbitrary, unreasonable and discriminatory and amounted to a confiscation of property rights in violation of state and federal constitutions.
It is true that zoning lines between areas must run somewhere and that the municipality is empowered to fix them, and that unless they are clearly shown to be unreasonable and arbitrary, courts will not interfere with the discretion of the zoning authorities.
However, a case in which the facts were somewhat similar to the facts in the present case is Buffalo Park Lane v. Buffalo, 162 Misc. 207, 294 N.Y.S. 413 (Sup. Ct. 1937), in which the court held that a division of a 60-foot lot adjacent to a lot zoned for apartment house use by a boundary line into a 20-foot lot similarly zoned and a 40-foot lot zoned for a strict single-family residential use was arbitrary and unreasonable and invalidated the division so as to *140 permit the entire lot to be used for parking accessory to the apartment house.
See also Hecht-Dann Construction Co. v. Burden, 124 Misc. 632, in 208 N.Y.S. 299 (Sup. Ct. 1924) Rathkopf, Law of Zoning and Planning (Supp. at page 13-8), in which the court held that if the lot divided by a boundary line traversing it at an angle were to be considered subject to the front setback line restriction for a residentially zoned lot, it would be impossible for a house to be built thereon. The court therefore held the restriction invalid as unreasonable and confiscatory.
The inclusion of the rear portion, namely, the remaining 34 feet of lot 1 fronting on Short Hills Avenue, and the remaining 45 feet of lot 2 in the residential zone, does not bear a real and substantial relation to the public health, safety, morals, comfort, convenience or the general welfare in the particulars laid down in N.J.S.A. 40:55-32, and so is violative of the constitutional precept and the essential policy of the statute. Furthermore, the minimum width for lots in a residential zone under the terms of the Springfield ordinance is 60 feet, and it would be necessary for plaintiffs to secure a variance to build on this substandard, undersized parcel with a width of 34-45 feet before such lot could be used for residential purposes, and also possibly to secure a variance because of maximum coverage and minimum yard requirements as set out in the ordinance. This would result in a rather "tight fitting" residence on an undersized lot which might compare unfavorably with the other residences on Short Hills Avenue. The question might also be raised as to what effect this would have on the uniformity of residential development on Short Hills Avenue.
A zoning regulation may be held invalid as to a particular property in a given zone by the unnatural running of boundary lines not in keeping with a well considered plan. Zoning, like every exercise of police power, must be contained by rule of reason. Katobimar Realty Co. v. Webster, 20 N.J. *141 114, 128 (1955). See also, Delawanna Iron & Metal Co. v. Albrecht, 9 N.J. 424, 429 (1952).
When a municipal legislative body divides a town into districts and provides the minimum land dimensions for particular uses in such districts, it does so with at least constructive notice of the existence therein of every substandard parcel held in single, separate ownership. It is under a duty to make adequate provisions for such parcels. While it can limit their use, it cannot render them useless. True, a line always exists beyond which the erection of a dwelling or place of business, or any other use of the substandard lot, may have become detrimental to the general welfare, but in such cases the municipality should compensate the owner if it proposes in the public interest to bar his property from any practical use for which it might be suited. Long Island Land Research Bureau v. Young, 7 Misc.2d 469, 159 N.Y.S.2d 414, 416, 417 (Sup. Ct. 1957).
A zoning ordinance may be held invalid as applied to particular property because of its inclusion thereof in a particular zone by an arbitrary, unreasonable, discriminatory and unnatural running of boundary lines not in accordance with a well considered plan, and this rule has applied as to a boundary line running through part of a single property. City of Omaha v. Cutchall, 173 Neb. 452, 114 N.W.2d 6, 11 (Sup. Ct. 1962).
Apparently the zoning of the subject premises permitting an O (office) use for 150 feet north from Morris Avenue was not in accordance with a well considered plan, in view of the fact that the township planning board, in furtherance of a master plan for the township, included the subject premises in a use zone district for office use to a depth of 200 feet from Morris Avenue, which proposal was not adopted by the township committee. Additionally, there is the fact that various other areas along Morris Avenue were zoned for office use to a depth of 200 feet along Morris Avenue, up to the easterly side of Short Hills Avenue. Consequently, the lack of uniformity would seem to indicate *142 that there was no well conceived plan in the zoning of the subject premises.
Use district restraints are required to be general and uniform in the particular district. Rockhill v. Chesterfield Cty., 23 N.J. 117 (1957). See also Westbury Hebrew Congregation, Inc. v. Downer, 59 Misc.2d 387, 302 N.Y.S.2d 923 (Sup. Ct. 1969). Section 4-B-20 of the Springfield ordinance defines a district as any part of the township to which certain uniform regulations and requirements apply, and section 6-B states that district boundary lines are intended to follow street center lines and lot or property lines as they exist at the time of the enactment of the ordinance unless otherwise indicated on the zoning map. Apparently the zoning of the subject premises was an exception. Zoning consists of more than looking at a map and drawing lines thereon, and in case a zoning ordinance affects an owner's property unreasonably and arbitrarily it will not be upheld in its application to this property. See City of Omaha v. Cutchall, supra, 114 N.W.2d at page 11.
Equality and uniformity of operation within a particular zone as respects the use of property are basic in a zoning statute. See Potts v. Board of Adjustment, Princeton, supra.

III
One of the purposes of zoning is to relieve traffic congestion in the streets. See N.J.S.A. 40:55-32. The parking of vehicles on the subject premises may accomplish this purpose to a certain extent, and the additional space will also eliminate the necessity of parking on the streets in the area. However, this is not too significant. See Wajdengart v. Broadway Thirty-Third Corp., 66 N.J. Super. 346, 352, 353 (App. Div. 1961). See also Suesserman v. Board of Adjustment, Newark, 61 N.J. Super. 28, 35 (App. Div. 1960). Nor is to too significant that there may be a few more additional motor vehicles using Short Hills Avenue at various times during the day if plaintiffs are permitted *143 to use the rear portion of the parcel for parking  in addition to the vehicles that are legally parked in the O zone using the street. However, a municipality should not use the zoning power to regulate minor traffic problems in rapidly growing communities, and such powers should be used only to deal with such problems in their major aspects as they affect the entire community or major portion thereof. Bogert v. Washington Tp., 25 N.J. 57 (1957); Stevens v. Huntington, 20 N.Y.2d 352, 283 N.Y.S.2d 16, 18, 19, 229 N.E.2d 591 (Ct. App. 1967).

IV
Defendants contend that since plaintiffs have since erected a three-story office building on the property and have assumed occupancy of the same, this belies the claim of confiscatory action on the part of the municipality. However, this is not the issue here. Plaintiffs have erected the office building on that part of their property zoned for that purpose (O zone). It is that part of their property in the rear which is in issue. It is that part of their property in the rear which is zoned for single-family residences (S-60), namely 45 feet of lot 2 of the plot and 34 feet of lot 1 along Short Hills Avenue. As stated supra, as a result of the boundary line passing through this property, this rear portion has become a substandard, undersized lot for residential purposes, and no residence can be constructed on it without a variance. Thus, under the present circumstances, this rear portion of the lot is rendered unusable. Furthermore, it is evident that the contracts for the purchase of the same were executed in April and May 1968 when the zoning ordinance of 1955 was still in effect, which contained section 21-D-30.01 permitting the board of adjustment in appropriate cases to recommend to the township committee, where a lot lies across the boundary of two districts, that a permit be granted for an extension into the more restricted district of a lawful conforming use permitted in *144 the less restricted district, but for a distance not exceeding 50 feet measured at right angles to such district boundary. At oral argument the attorney for plaintiffs stated that they relied on this provision in April and May 1968 when the contracts were executed. However, in September 1968 the new zoning ordinance was enacted and the relief provisions of section 21-D-30.01 were eliminated and no comparable provision for relief was provided.
The rear 34 feet of lot 1 on Short Hills Avenue and the rear 45 feet of lot 2 cannot be used for residential purposes without a variance, although they are in a residential zone, because they are undersized, substandard lots. Thus at present it is impossible to build there because the minimum width under the terms of the ordinance is 60 feet, which is almost twice the width of lot 1 on Short Hills Avenue. Accordingly, it is not peculiarly suitable for this use. However, it is practically on a level with the rest of plaintiffs parking area and it is contiguous to and abuts this area. There is no topographical difference between the rear parcel and the rest of the subject premises, and there is no extraordinary or exceptional situation with the property as compared to the remaining property of plaintiffs.
Thus it is the opinion of this court, for the reasons set out supra, that the provision of S-60 of the ordinance is invalid, arbitrary and unreasonable in its application to the rear of lots 1 and 2 of the subject premises. In the event that the said rear portions of lots 1 and 2 are used for parking as plaintiffs have requested, it will be necessary that the provisions of section 9-E-10 of the zoning ordinance be complied with, which states that a ten-foot deep buffer area shall be maintained between the parking or loading areas located in the O district (among others), which abuts the S-60 residential district (among others). The ordinance further provides that the said buffer strip shall separate the above mentioned districts by means of a six-foot-high, close-woven wood fence and the planting of appropriate evergreen shrubs spaced so that they will create an effective screening. *145 Fencing shall be located in the buffer area in such a manner that planting will be provided facing residential properties.
This will leave approximately 24 feet remaining for parking on lot 1 and approximately 35 feet remaining for parking on lot 2.